IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **TODRICK MORRIS,** § <br> § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> **LT JONATHAN S HYATT, CORR OFFICER ZACHARY DENNIS, DEREK C ALLEN, UNKNOWN . UNKNOWN, UNKNOWN . UNKNOWN, OFFICE OF THE ATTORNEY GENERAL - AMICUS CURIAE,** § <br> § <br> § <br> § <br> § <br> **Defendants.** | **CIVIL ACTION NO. 6:23-CV-00115-JDK** |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

The prior report and recommendation of the undersigned (Doc. No. 13) is hereby **WITHDRAWN**[1] and replaced with the present report and recommendation. On March 6, 2023, Plaintiff Todrick Morris, an inmate confined at the Texas Department of Justice (TDCJ) McConnell Unit, proceeding pro se and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. This case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the action. (Doc. No. 3.)

Under 28 U.S.C. § 1915A, a court shall review, before docketing if feasible or in any event as soon as practicable after docketing, any complaint in a civil action wherein a prisoner seeks

---

[1] Upon review, the court has determined that Plaintiff has not accumulated three strikes according to 28 U.S.C. § 1915(g) as *Morris v. Melendrez et al*, No. 2:15-CV-00128 (N.D. Tex. March 23, 2017) involved a dismissal of only certain claims as frivolous and not the entire case. *See Brown v. Megg*, 857 F.3d 287, 290 (5th Cir. 2017) (holding that a strike issues only when the entire case is dismissed for being frivolous, malicious, or failing to state a claim); *see Morris v. Melendrez*, No. 2:15-CV-0128, 2017 WL 1102880, at *1 (N.D. Tex. Mar. 23, 2017) (dismissing property deprivation claim as frivolous, but dismissing other § 1983 claims on grounds of qualified immunity).

1

redress from a governmental entity or officer, or employee of a governmental entity. During its review, the court must identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1). Section 1915A applies regardless of whether the plaintiff has paid a filing fee or is proceeding IFP. *See Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) ("The plain language of [§ 1915A] . . . indicates that it applies to any suit by a prisoner regardless of whether that prisoner is or is not proceeding IFP.").

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

All well-pleaded facts are taken as true, but the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a

"formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.*

### A. Plaintiff's Complaint

Plaintiff filed a complaint detailing, in fifteen handwritten pages, various complaints, the majority of which surround an incident that occurred on November 15, 2022 at the TDCJ Michael Unit. (Doc. No. 1.) The allegations are further supported by a five-page handwritten declaration. (Doc. No. 1-1.). Plaintiff's complaint alleges claims brought pursuant to 42 U.S.C. § 1983 against Jonathan Hyatt, Lieutenant at the TDCJ Michael Unit; Zachary Dennis, Correctional Officer at the TDCJ Michael Unit; Derek Allen, Correctional Officer at the TDCJ Michael Unit; and Doe Defendants, Correctional Officers at the TDCJ Michael Unit (collectively "Defendants").

Plaintiff's primary allegations appear to be that while he was housed at the TDCJ Michael Unit, Officer Dennis approached his cell asking if he would like to go to dayroom recreation. (Doc. No. 1-1, at 3.) Plaintiff contends that he stated he would like to go the recreation area, his handcuffs were removed, and he was escorted to the dayroom. *Id.* Plaintiff alleges that he saw Officer Dennis escort another inmate off the pod. *Id.* Plaintiff contends that later, after Officer Dennis had secured another inmate in the dayroom, he approached Plaintiff and asked if he was ready to be transported. *Id.* at 4. Plaintiff alleges that he inquired whether another officer was going to need to be summoned to escort him because Plaintiff was listed as level 3A for which TDCJ policy required a supervisor to assist. *Id.* Plaintiff states that Officer Dennis said "no," that he was going to escort Plaintiff himself and then removed him from the dayroom and began to escort him. *Id.* Plaintiff alleges that while he was being escorted, he was hit from behind in the head with a fan motor by an unrestrained inmate. *Id.* Plaintiff alleges that both Officer Dennis and Officer Allen stood on and watched and did not help. *Id.* As a result of the incident, Plaintiff alleges that he suffered

3

nausea, dizziness, confusion, pain, and a head wound that needed to be treated by medical. *Id.* at 5.

### a. Official Capacity Claims

As an initial matter, Plaintiff alleges claims against Defendants in both their individual and official capacities. *See* Doc. No. 1, at 6. Plaintiff specifically requests relief in the form of compensatory and punitive damages as well as declaratory relief. *Id.*

At all relevant times, Defendants are alleged to be employees of TDCJ. (Doc. No. 1.) The Eleventh Amendment of the United States Constitution grants sovereign immunity to states, therefore making states generally immune from suit in federal court. U.S. CONST. AMEND. XI; *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Moreover, a suit against a state official in their official capacity is barred by the Eleventh Amendment when it seeks monetary compensation for past injuries to be paid from a state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663–64 (1974). Under the Eleventh Amendment, federal courts lack jurisdiction to entertain suits in law and equity against a non-consenting state, or a state agency, by its own citizens. *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1220 (2008). Because Plaintiff's claims against Defendants in their official capacities are claims against the state agency, Plaintiff's demand for relief in the form of monetary compensation for acts by Defendants in their official capacity is barred by the Eleventh Amendment. *See Cox v. Texas*, 354 F. App'x 901, 902 (5th Cir. 2009) ("TDCJ is a state agency that enjoys immunity from suit in federal court"); *Harris v. Angelina County, Tex.*, 31 F.3d 331, 338 n. 7 (5th Cir. 1994) ("Under the current state of the law, the TDCJ is deemed an instrumentality of the state operating as its alter ego in carrying out a public function of the state, and is immune from suit under the Eleventh Amendment."). Neither Texas nor TDCJ has waived its immunity in this case. As such, this court lacks jurisdiction

over those claims and Plaintiff's claims against Defendants in their official capacities for monetary damages should be dismissed without prejudice.

Moreover, although Plaintiff also seeks declaratory relief, which is not barred by the Eleventh Amendment, *see Aguilar v. Texas Department of Criminal Justice*, 160 F.3d 1052, 1053–54 (5th Cir. 1998) (stating that a § 1983 lawsuit may be "brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect"), any request for injunctive or declaratory relief in this case is moot because Plaintiff has been transferred from the Michael Unit to the McConnell Unit. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) ("Herman's transfer from the [East Carroll Detention Center] to the Dixon Correctional Institute in Jackson, Louisiana, rendered his claims for declaratory and injunctive relief moot."); *Aguilar*, 160 F.3d at 1054. Because Defendants are not in a position to provide Plaintiff with injunctive relief due to Plaintiff's transfer to another prison, Plaintiff's official capacity claims for injunctive and declaratory relief should likewise be dismissed. *See Okpalobi v. Foster,* 244 F.3d 405–27 (5th Cir. 2001).

### b. Individual Capacity Claims

As discussed, Plaintiff also purports to sue Defendants in their individual capacities. (Doc. No. 1, at 6.)

### i. Claims Against Officer Dennis

Construing the allegations liberally, Plaintiff's primary claim against Officer Dennis is a failure to protect claim. The Supreme Court has explained that:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. …

5

> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer v. Brennan,* 511 U.S. 825, 837–38 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Thus, to state a constitutional claim for failure to protect, a plaintiff must show: (1) that he was subjected to conditions posing a substantial risk of serious harm; and (2) prison officials were deliberately indifferent to his need for protection. *Id.*; *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Deliberate indifference "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Crucially, in order to show that prison officials were deliberately indifferent to a prisoner's need for protection, the prisoner must prove "that the official *actually knew* of a substantial risk of serious harm and *failed to act*." *Adeleke v. Heaton*, 352 F. App'x 904, 907 (5th Cir. 2009) (per curiam) (unpublished) (emphasis added). Moreover, "mere negligence in failing to protect a prisoner from assault does not establish a constitutional violation." *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

In the failure to protect context, the subjective knowledge of harm prong may be met when an inmate informs a correctional officer about a specific fear of assault and is then assaulted. *See B. Braxton/Obed-Edom v. City of New York*, 368 F.Supp.3d 729, 738 (S.D.N.Y. 2019) (citing *Francis v. City of New York*, 2018 WL 4659478, at *4 (S.D.N.Y. Aug. 21, 2018)). Here, while Plaintiff alleges that he asked Officer Dennis if he was going to need an additional officer to assist in escorting Plaintiff, Plaintiff does not allege that he ever communicated to Officer Dennis or anyone else that he was afraid of being assaulted. Moreover, Plaintiff's vague references to the high security unit and other inmates being transported fail to allege facts that would make it so obvious that any prison official would have known of the risk simply because of its obviousness. *Farmer*, 511 U.S. at 842. Rather, Plaintiff's allegations turn on the contention that Officer Dennis

knew that it was against TDCJ policy to escort Plaintiff by himself due to Plaintiff's security classification level. But the failure of a correctional officer to follow rules and regulations does not, alone, establish deliberate indifference. *See Thompson v. AVC Correctional Center Staff*, 2013 WL 3778911, at *3 (W.D. La. July 17, 2013) (dismissing a failure-to-protect claim in which the plaintiff urged that correctional officers failed to protect him from an assault by another inmate and were deliberately indifferent to a serious risk of harm because they left the plaintiff and assailant together and unattended in violation of prison policy, noting that "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation") (citing *Richardson v. Thorton*, 299 F. App'x 461, 462–63 (5th Cir. 2008) ("The failure of the prison to follow its own policies ... is not sufficient to make out a civil rights claim.")); *Sandoval v. Fox*, 135 F. App'x 691, 691–92 (5th Cir. 2005) ("The mere failure to comply with prison rules and regulations does not, without more, give rise to a constitutional violation.")).

Here, the fact that Officer Dennis was escorting Plaintiff without the presence of another officer does not demonstrate that he had the subjective knowledge that Plaintiff faced a substantial risk of harm. Plaintiff does not allege that Officer Dennis knew that an inmate who lived in restrictive housing was unrestrained in the area or that he was aware of the risk of an attack. Moreover, the fact that Officer Dennis transported Plaintiff alone as a high security inmate does not mean that he had knowledge of the potential risk of serious bodily harm to Plaintiff. Indeed, Plaintiff alleges no facts from which the court could reasonably infer that Officer Dennis knew a restricted housing inmate was unrestrained and likely to assault Plaintiff. As such, Plaintiff has failed to state a claim for failure to protect against Officer Dennis.

Plaintiff appears to also allege a claim against Officer Dennis for his failure to act and/or intervene once the alleged assault commenced. "It is well established that prison officials have a

constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 832–33). However, the Fifth Circuit has held that "there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury." *Rios v. Scott*, 100 F. App'x 270, 272 (5th Cir. 2004*); see also Longoria v. Texas*, 473 F.3d 586, 593–94 (5th Cir. 2006) ("[n]o rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence."). Here, Plaintiff alleges that Officer Dennis was carrying a chemical agent at the time of attack but nonetheless abandoned him upon attack and failed to call for help despite observing Plaintiff being beaten in the head with a fan motor by another inmate. (Doc. Nos. 1, 1-1.) These facts, taken as true, plausibly allege a claim for deliberate indifference for failure to act because it is alleged that once the assault commenced Defendant Dennis, who was carrying a chemical agent, saw Plaintiff getting beaten in the head with a fan motor, thereby appreciating the risk of substantial harm and nonetheless deliberately failed to act. As such, Plaintiff's claim against Defendant Dennis for failure to act should be allowed to proceed.

For these reasons, the court finds that Plaintiff failed to state a claim for failure to protect against Officer Dennis and that that claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff's claim based upon Officer Dennis's failure to act after the commencement of the assault, however, may proceed.

### ii. Claims Against Officer Allen

Plaintiff similarly alleges a claim for violation of the Eighth Amendment against Officer Allen. (Doc No. 1, at 5.) However, Plaintiff does not allege any facts regarding Officer Allen relevant to the incident in question other than to state that Officer Allen was looking on from the

"Picket" and that Officer Allen eventually initiated an "I.C.S." (Doc. No. 1-1, at 4–5.) Plaintiff alleges no facts regarding Officer Allen's subjective state regarding a risk of serious bodily harm to Plaintiff. Rather, the claim appears to be framed in Officer Allen's apparent failure to act or intervene while Plaintiff was being attacked by another inmate. As explained above, however, "there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury." *Rios*, 100 F. App'x at 272; *Longoria*, 473 F.3d at 593–94 ("[n]o rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence."). Here, Plaintiff's allegations concede that Officer Allen called for additional help to assist at the time of the incident, negating any inference of deliberate indifference on his part. (Doc. No. 1-1, at 5.) These facts, taken as true, fail to establish that Defendant Allen acted with more than mere negligence. *Iqbal*, 556 U.S. at 678; *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022).

For these reasons, the court finds that Plaintiff has failed to state a § 1983 claim against Officer Allen and his claims against Officer Allen should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### iii. Claims Against Lieutenant Hyatt

Plaintiff alleges that he is asserting claims against Defendant Hyatt for violations of the First Amendment, retaliation, and conspiracy. (Doc. No. 1, at 5.) It is unclear whether Plaintiff intended to assert claims against Lieutenant Hyatt related to the alleged assault, or whether he intended to assert wholly separate claims of retaliation. To the extent Plaintiff intends to implicate Lieutenant Hyatt in the alleged assault, Plaintiff fails to establish the personal involvement of Defendant Hyatt with respect to the alleged assault as he has alleged no facts regarding Defendant

9

Hyatt's personal involvement. It is well-settled that a plaintiff in a civil rights case must demonstrate not only a constitutional violation, but also personal involvement on behalf of those alleged to have violated the plaintiff's constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Thompson v. Crnkovich*, No. 1:16-CV-055-BL, 2017 WL 5514519, at *2 (N.D. Tex. Nov. 16, 2017) ("Without personal involvement or participation in an alleged constitutional violation, or implementation of a deficient policy, the individual should be dismissed as a defendant.").

Moreover, the doctrine of *respondeat superior* does not apply to § 1983. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for a subordinate's actions on any vicarious liability theory. In fact, the Supreme Court has held that the term "supervisory liability" is actually a misnomer because "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. In *Iqbal*, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, other courts have questioned whether supervisory liability remains an option at all in § 1983 cases. *See, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1194–95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

A supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations, or (3) the supervisory official implements a policy that itself is a repudiation of civil rights and is the moving force of the constitutional violation. *See Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *see also Pena v.*

*City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) (explaining that a plaintiff in a § 1983 case establishes supervisor liability "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that result in the constitutional injury") (internal citation omitted).

Importantly, in order to demonstrate that a supervisor is liable for constitutional violations committed by subordinate employees, "plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id*. (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)).

Here, Plaintiff fails to allege Defendant Hyatt's personal involvement in any alleged Eighth Amendment violation, nor does Plaintiff allege that Defendant Hyatt implemented a policy that is the moving force of Plaintiff's alleged Eighth Amendment violation. To the extent that Plaintiff maintains that Defendant Hyatt is liable because of any supervisory role, the court notes that this argument is also without merit. Having found that Plaintiff cannot demonstrate Defendant Hyatt's personal involvement, he likewise cannot show supervisory liability. *See Estelle v. Gamble*, 429 U.S. 97, 105–07 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Thus, Plaintiff has failed to state a claim against Defendant Hyatt for any Eighth Amendment violation.

The only allegations made specifically against Defendant Hyatt are vague references to a claim for retaliation for Plaintiff's filing of grievances and lawsuits. To the extent Plaintiff is attempting to assert a constitutional claim based upon the handling of his grievances, an offender "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). To the extent Plaintiff is intending to assert an unrelated claim against Lieutenant Hyatt for retaliation, Plaintiff has failed to state a viable claim.

As discussed, Plaintiff alleges that Defendant Hyatt confronted him about his filing of lawsuits and threatened to gas him and beat him up in retaliation for filing. (Doc. No. 1, at 8.) To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and allege that but for the retaliatory motive the complained of incident would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). To succeed on a retaliation claim, a prisoner must establish "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Here, Plaintiff has failed to allege a specific retaliatory adverse act. Plaintiff alleges only that Defendant Hyatt threatened to gas him or beat him up, but not that any adverse action was ever taken against him for the filing of suit. The Fifth Circuit has held that a retaliatory act must be more than *de minimis*. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Generally, verbal threats do not rise to the level of a constitutional violation. *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). Indeed, "mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations." *Robertson v. City of Plano, Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (alteration omitted); *see Hines v. Cain*, 2007 WL 891880 at *4 (E.D. La. Mar. 20, 2007) (collecting cases); *see also Hudson v. Univ. of Tex. Medical Branch*, 441 F. App'x 291, 292–93 (5th Cir. 2011) (finding that mere threats fail to support a claim of retaliation). A prison official's mere use of threatening language, without more, does not constitute a retaliatory adverse act; instead, a prisoner seeking to prove a claim of retaliation must show that he "suffered a concrete, tangible harm." *Hudson*, 441 F. App'x at 293. As such, Plaintiff has failed to state a claim for retaliation against Defendant Hyatt.

To the extent that Plaintiff intends to allege some sort of conspiracy claim that Defendant Hyatt arranged to have him transported without proper security and assaulted by another inmate, there is no factual basis alleged for any such claim. The Fifth Circuit has stated that specific facts must be pleaded when a conspiracy is alleged. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). In pleading these specific facts, Plaintiff must allege the operative facts of the alleged conspiracy. *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). "Bald allegations that a conspiracy existed are insufficient." *Id.* Under § 1983, a claim for conspiracy must allege (1) an agreement between private and public defendants to commit an illegal act, and (2) a constitutional deprivation. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Here, as discussed, the Plaintiff has failed to allege a constitutional violation. Moreover, even if he had, Plaintiff has not alleged any facts regarding any agreement between Defendant Hyatt and any other persons to commit an illegal act. As such, any purported conspiracy claim fails.

For the reasons discussed, Plaintiff has failed to state a claim upon which relief can be granted against Defendant Hyatt and the claims against him should be dismissed from this action pursuant to 28 U.S.C. § 1915A(b)(1).

### iv. Claims Against Doe Defendants

Plaintiff's complaint does not delineate any clear allegations against any unknown Defendants. However, it appears that Plaintiff intends to assert a § 1983 claim for violation of the Eighth Amendment against unknown Defendants regarding their failure to act during the inmate attack incident. (Doc. No. 1, at 5.) Nonetheless, Plaintiff fails to allege a single fact with respect to these unknown Defendants. Plaintiff's utter lack of factual allegations with respect to any unknown defendants fails to state a claim. *Iqbal*, 556 U.S. at 678. As such, the claims against the Doe Defendants should be dismissed from this action pursuant to 28 U.S.C. § 1915A(b)(1) for

failure to state a claim. To the extent Plaintiff gathers additional information regarding the unknown Defendants, he is free to file a motion for leave to amend his complaint.

## CONCLUSION

Having conducted screening pursuant to § 1915A, the court **RECOMMENDS** that the claims against Defendants in their official capacities be **DISMISSED** without prejudice for lack of jurisdiction and as moot. The court **FURTHER RECOMMENDS** that the claims against Defendant Allen and Defendant Hyatt should be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim, and the claims against the Doe Defendants should be **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. Finally, it is **RECOMMENDED** that Plaintiff's failure to protect claim against Defendant Dennis be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1), and that his claim against Defendant Dennis for failure to act shall proceed as the sole remaining claim in this action.

Although a court should allow a pro se plaintiff every reasonable opportunity to amend his pleadings, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998), Section 1915A does not require that a plaintiff be given notice of an impending dismissal. Moreover, giving a plaintiff an opportunity to amend is not necessary if he has pleaded his "best case." *See Norman v. Tex. Court of Criminal Appeals*, 582 F. App'x 430, 431 (Mem) (5th Cir. 2014) (unpublished); *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Here, Plaintiff has already submitted numerous handwritten pages detailing the events of which he complains, as well as a sworn declaration. Thus, the court finds no basis to permit amendment at this time.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations

contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 3rd day of August, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE